Eerie, eerie, all persons having business with the Honorable, the United States Court of Appeals for the Ninth Circuit will now draw near, give your attention, and you will be heard. God save these United States and this Honorable Court. Please be seated. Good morning. Good morning. Is it Lowell High School? Good morning and welcome. Thank you for joining us today. My name is Morgan Christen. I'm one of the judges on the circuit court, as are my two colleagues here with me on the bench today. This is to my right, Judge Carlos Bea, and to my left, Judge Anthony Johnstone. I'm going to do just a little bit of housekeeping before we begin, and then we'll do a sound check to make sure everybody can hear okay. The first thing to note is that we have 1, 2, 3, 4, 5 cases submitted on the briefs today. Those cases will not be argued. The first is 21-1357, Hueto v. Garland. The second is 21-380, Colleen Alcantar v. Garland, 21-70425, Sanchez Martinez v. Garland, 22-311, Valencia v. Garland, and 22-731, DeJuan Andres v. Garland. All right, so we have one lawyer participating by Zoom. Can you hear us okay? Yes, I can hear you. Can you hear me? We can. We can hear you just fine, right? And you can hear her opposing counsel? Great. So we'll go ahead and go on to the first case on the calendar, please. It's Baffert v. Administrative Committee of the Northrop Grumman Pension Plan, 22-55634. When you're ready, we are ready for your argument. Good morning, and may it please the Court. My name is Elizabeth Hopkins, and I'm here on behalf of the plaintiffs, Stephen and Laura Baffert and Evelyn Wilson. If I may, I would like to reserve three minutes of my time for rebuttal. You may. Thank you. ERISA Section 105 requires that pension plan administrators provide plan participants with pension benefit statements in specified circumstances. The primary issue here, and really the only one addressed by the District Court and raised by the Plaintiffs on Appeal, is whether Section 105 requires that these statements be accurate. Defendants insist, and the District Court held that it does not, that it simply requires that these statements be provided on time. This is not correct. It makes no sense. It's inconsistent with the fundamental purposes of ERISA, and more specifically with the purposes of ERISA Section 105. And it's not supported by the language of Section 105, which requires that pension benefit statements inform participants what their accrued benefits are. And this means the amount that they'll receive upon retirement. And nothing in ERISA's enforcement provision indicates that a timely but completely inaccurate statement suffices. In fact, Section 502C, which is 29 U.S.C. 1132C, permits a court in its discretion to award up to, it's now up to $110 a day for failure to meet the requirements of Section 105. And one of these requirements, as I've mentioned, of Section 105, is that a pension benefit statement set forth the participant's accrued benefit, which is always a precise and always an ascertainable number. Can I ask you, can I stop you there? My understanding is that it requires the 1025A2AI1 requires the statements must include total benefits accrued, and that's not a defined term. Is that right? It's not defined in Section 105, but it is defined in ERISA, in Section 3 of ERISA. I have 100223A, right? And that defines accrued benefit, right? So the reason I interrupted is because I want to make sure I'm following your argument. And what I understand is that what you just said is a function of your understanding that 1025A2A requires, when it's by saying total benefits accrued must be in a pension benefit statement, you understand that to mean accrued benefit. That's that's correct. Thank you. It's a slightly different terminology, I suppose, because the order of the words is different. But yes, that's how that's how it's understood. That's how I understood it. And I believe that's how it's generally understood. So as alleged here, the statements that plaintiffs were given, that they requested and received, did not state their, their accrued benefits, it's stated an entirely incorrect amount, in fact, more than two times the correct amount. Defendants say that it's inconceivable that Congress would have wanted to penalize plan fiduciaries and specifically the plan administrator for providing such an error, such inaccurate statements. But in fact, it's inconceivable that Congress would have condoned simply letting plan administrators off the hook in these circumstances. I think this bears repeating. In enacting ERISA, Congress was really laser focused on protecting participants in defined benefit pension plans, and it did so in three primary ways. First, by imposing strict fiduciary duties on those charged with managing and administering plans, and that, of course, includes the plan administrator. Second, by guaranteeing promise benefits, primarily but not entirely through a government run insurance program, the PBGC. And third, by imposing disclosure obligations on plan fiduciaries, so that participants could always know exactly where they stood with respect to their defined benefit, pension benefits and their retirements. Ms. Hopkins, could you address your friend's view that the statements we're talking about are really estimates and not the accrued benefits? I'm trying to get a sense because I don't think we've seen much on whether inaccurate statements can be a basis for a 1025 claim. Yes, Your Honor, that's exactly correct, that there's little law on this. There's a bit, but not a whole lot. With respect to whether these are pension benefits statements for purposes of 105, I think the committee's argument that they're not, can't be squared with plaintiff's allegations that they did request such statements. And these allegations really have to be taken for purposes of a motion to dismiss. And in fact, I think it's kind of hard to know what to make of this assertion that plaintiffs didn't request information about their accrued benefits, but instead requested information about what they received on retirement as some kind of estimate or guesstimate, I would say, which defendants say is not their accrued benefits because they say that the accrued benefits means the benefits that somebody would receive upon retirement if they stopped working today. This isn't correct, and really the salient point is that when plaintiffs tried to obtain their pension benefits statements so that they could plan for retirement, which is exactly the purpose of Section 105, they were given incorrect statements that were calculated using an incorrect formula that misstated their benefits by a lot. And that's true whether they retired today, tomorrow, or 10 years from now. May I interrupt and ask a follow-up question because I think you, this may be a situation where the lawyers know something we don't know. I understand from the briefing that, I think it's uncontested, or at least the plaintiffs certainly allege, that they received, I'll just say received directions about how to get a pension benefits statement and that they followed those directions and navigated to a web page. What I don't think I have in the record, I have SER 4 through 6, which is the document that you were just talking about, and the question is whether that's a pension benefits statement or not. Defendants have taken the position it is not. But I don't know what, and I don't think the record shows us what the plaintiffs would have seen when they navigated to that web page. We just know what spit back out. So I don't know if there was a tab, for example. Maybe discovery hasn't gone there, but I don't think we know what they were confronted with and what was preloaded, if anything. Yes, quite frankly, Your Honor, I am not sure of that at this point either because the plaintiffs, they remember going to the website, but they don't remember exactly what it looked like. But this they know, they typed in their names and I believe either an employee identification number or social security number. And this allowed them to navigate, and I think it's through a tab, but we haven't seen screenshots of them or any other indication. And this was quite a few years ago now for both of the plaintiffs in this case. But, you know, essentially it had tabs that they clicked on that took them to a place, another screen, I suppose you would call it. I'm not very technically set. But here's the problem, ma'am, here's the problem. Here's the problem from our perspective. It could be that they navigated to a screen that had a tab that said pension benefit statement, click here, and a different tab that allowed your clients to calculate a benefit that they might receive if they retired early. And we don't know that. Yes, Your Honor, that's true. And I don't know that either. They don't remember there being two different tabs and they thought they were. Counselor. You answered my question. Thank you. Judge Bea has one for you. I'm really not too interested in what they remember or what you think they remember. We're here on a 12 v. 6 motion. The question is, what did they allege in the operative complaint? What did they allege? They allege that they requested pension benefit statements and that the statements they got were incorrect. They allege that they requested accrued benefit statements, pension statements, in response to the prompts which they received. Is that what they alleged? Yes, they were ultimately, Your Honor, directed to make a phone call. And then on these phone calls, they asked for the pension benefit statements. That's what they allege in the operative complaint. Is that correct? They do. Thank you. That's correct. And, you know, I think Your Honor was perhaps alluding to an important point, which is that, you know, all these questions about, you know, what actually happened. What, you know, were there separate? Was there a separate tab for something else called the pension benefit statement that they could have clicked on? You know, which we believe is not the case, but that hasn't been developed yet. Exactly. That's the point. And so the document that is submitted that we do have on the top of it says pension estimate calculation statement. Hence, defendant's argument that Judge Johnstone was just alluding to. But we can't tell if some other information was provided to them on that website. We just don't have that, right? Unless we're missing it. No, that's correct. All right. We don't have that. You know, we want to know. We want to have the opportunity to know more about this. But, you know, I would say that just calling it an estimate doesn't make it so. This should have been ascertainable. It should have been precise. And the amounts that they were given were down to the penny. And when they, as long as they put in Stephen Baffert, for instance, put in the same date that he terminated, that he expected to terminate employment and the same date that he expected to start his retirement, he got exactly the same number. Thank you. So it's hard to understand. Thank you. You're just running out of time. I think Judge Johnstone has another question. Well, I guess, Ms. Hopkins, to turn it around, if they hadn't provided the Bafferts the opportunity to get that statement, wouldn't that have been a separate violation of the notice and availability requirements? Yes, that's exactly right. And, you know, that's one of the points we made in saying that in amending the complaint, not only to allege that they requested these statements, but to allege that they were never provided pension benefit statements automatically every three years and were never given a method by which to obtain them that would have gotten statements that the defendants would say were pension benefit statements. That is what we allege. That's what we believe to be the case. And that's what we would like the opportunity to prove. You know, I would say however you slice this, it gets us back to the real question on appeal, which is whether the benefit statement provided under Section 105 has to be accurate. We believe and assert that it does. We assert that what the plaintiffs in this case received was not, and we ask this court to so hold. Is it time for rebuttal? Yes. Okay. We'll hear from opposing counsel, please. Good morning, Your Honors. May it please the Court. Brett Lagner on behalf of the Administrative Committee of the Northrop Grumman Pension Plan. Your Honors, this court should affirm the district court's judgment. Now on its second time on appeal, the issues remaining in this case have been substantially narrowed. The genesis of this case was the provision of inaccurate estimated projections of future benefits by a third party record keeper, Hewitt. Plaintiffs are pursuing their remedies against Hewitt, the actual entity that provided those statements, in state court. In this case, all that is left are two claims against the committee regarding certain ERISA-related disclosures. First, plaintiff's claim under B-2 alleges that the committee did not provide pension benefit statements within 30 days of their written requests. Second, plaintiff's claim under B-1 purports to allege that the committee did not provide a triennial benefit statement or annual notice of how to obtain a benefit statement. There are multiple paths to affirm the dismissal of both of these claims, Your Honors. Turning first to the B-2 claim. The first point here is that they did not request a pension benefit statement, Your Honors. How do we know that? They allege they did. Well, so, Your Honor, they allege that they did, but a pension benefit statement is a term that is defined in ERISA. The statute provides... We know. We appreciate that. And so the statute provides that it must, it is a statement that provides the amount of accrued benefits. Right. And the amount that is non-forfeitable or the date that it will become non-forfeitable in the future. Mr. Legner, do you agree that they allege that they did? No, Your Honor. Why do you say that the operative statements of fact do not make it plausible that they allege that they made the request? Please tell me that. Absolutely, Your Honor. For example, paragraph 37 of the Third Amended Complaint at page 85 of the extended, of the excerpts of record, lists the request that Mr. Baffert made. In that chart, Mr. Baffert, for instance, on March 2010, requested a statement based on an assumption that he would retire in October 2015, five years in the future, and begin his benefits the next month in November 2015. To get that statement, that is a projection of future statements. That's not a question of if I retire now, how much have I accrued. That is a request for if I retire in five years, based on certain assumptions such as continued employment, raised percentage, et cetera, what will I receive at that point? Mr. Legner, in 36, the allegations are Mr. Baffert began requesting pension benefit statements. Did the committee or its provider not respond with those numbers in response to what is alleged to be a request for pension benefit statements? There is no allegation that the committee or the third party record keeper did not respond at all to any requests. Again, the salient point here is that what they were requesting wasn't a statement of my benefits that are accrued now, such that if I were to stop working for Northrop today, when I reach retirement age, what would my benefits be? That's not what they requested. Did the committee say to the plaintiff, you're requesting a projection rather than a statement? Do you want a statement? We do not give projections. Did they say that? No, Your Honor, because the committee... No, they responded to his request, did they not? And when they responded to the request, was that not a statement of their view of what he would be able to get as a benefit? Two points to that. And that is not a benefit statement? Correct, Your Honor. Why is it not a benefit statement? Because a benefit statement is defined in the statute to be a statement of your accrued benefits right now, what you have earned. And they're responding to his request, and they'll say these are the benefits you will have accrued on a certain date. Right. And that's not a benefit statement? No, it's a request for a different thing. And, Your Honor, the summary plan description, which is in the record, draws this distinction very clearly. It provides that. It provides that plaintiffs, plan participants, have the option to request their statement of accrued benefits. In other words, a statement of, if you stop working for Northrop now, what will your benefits be when you reach retirement? Or a projection, an estimate of future benefits. That distinction is drawn explicitly in the summary plan description. But we don't know how they responded. What we know is that we have an allegation that these folks requested pension benefit statements because they were told two ways. One is in the summary plan description, and also in an annual statement, according to you, that this is what they need to do. I'm just going to write sort of a set of directions that involved a website, a telephone call, but it doesn't matter. The point is they say they requested pension benefit statements. That's the allegation at the 12B6 stage. And they followed those directions. And we don't know what screen they were met with, what the options were. That's a black box for us. We just have this SER that tells us what Mr. Baffert got back. The district court record has the statement for the other plaintiff. But that's not even part of our record on appeal. Be that as it may, I grant you that this document that we have at SER 4 through 6 is called something else, estimate summary of benefits. And I'll certainly grant you that it doesn't comply with the distinction you're making between normal retirement age and the early retirement age and if you retire right now. But the problem is we can't tell what choices he was given or what information he was given when he navigated that screen in response to his question, his request for a pension benefit statement. We just don't know that. We do know that, though, Your Honor. How do we know that? The allegations and the complaint. And keep in mind, they've been allowed multiple opportunities to amend their allegations, to bring whatever they have. But their allegations state that, for instance, in 2010, Mr. Baffert requested a statement of what his benefits would be if he retired in 2015. And it's based on certain assumptions of continued employment, which is reflected in the document in the SER, shows, you know, employment, continued employment up to X date. Well, Mr. Legner, that establishes what the committee provided them. But, you know, a lot of this at the pleading stage, again, there's a request for pension benefit statements. So I guess what you're saying is that there's a factual dispute over what he requested because it sounds like you're conceding that the committee never provided the pension benefit statements that 1025 requires. No, Your Honor. To clarify, I'm absolutely not conceding that they did not provide anything that was required. But I want to ---- But can I put a point on this so I can make sure I'm following your answer to Judge Johnstone's question? Sure. I think your position is that SER 4 through 6 is not a pension benefit statement. That's absolutely correct. Okay. So go back, please, to Judge Johnstone's question. I just want to make sure I'm following you. Sure. And if there is a pension benefit statement somewhere in the record, we'd love to see it. They haven't provided a pension benefit statement because, again, they didn't request. They ---- To be clear, Your Honor, there's not a factual question here. Taking the allegations of their complaint ---- How can there not be a factual question? Their allegation is we requested pension benefit statements, and your response, boiled down, I think, is that this exhibit, SER 4 through 6, is not a pension benefit statement, and we didn't provide a pension benefit statement because they didn't ask for a pension benefit statement. That's a question. Is that right? That is mostly right, Your Honor, but there's an important point here. They allege that they requested a pension benefit statement, which is a legally defined term. That's a legal conclusion as to whether they actually requested a pension benefit statement. It's a term of art. We appreciate that. But then they go on to specifically allege what they, in fact, requested. And their complaint, this is the entire theory of their complaint, which is that they were requesting projections of future benefits continually. So you're claiming that they pleaded themselves out of the case? Yes, Your Honor. I'm saying that the allegations, the plain allegations in the complaint show what they requested and what they requested. Well, it almost ---- to put a finer point on it, it almost sounds like you're saying their complaint is a non sequitur, that they allege that they requested a pension benefit statement and then went on to give additional details about what they, in fact, plugged in. And you think that means they didn't actually request a pension benefit statement? Or are you really contending that they never even alleged they requested a pension benefit statement? The ---- I admit that the complaint contains the words re-requested a pension benefit statement. But again, that's a legal conclusion. They then go on to explain what they requested. So that's the non sequitur theory that I'm proffering. You're saying it's internally inconsistent. The complaint conflicts with itself. I'm saying that their other ---- yes, I'm saying that their other allegations rebut their legal conclusion, which is not taken as true. Okay. That they requested a pension benefit statement. Again, they requested projections, which the SPD, the summary plan description, makes clear they have the right to go to the website and project what their benefits would be in the future. Mr. Legner, could you then distinguish the non-covered projections that you're discussing was what your client believes is the actual request from the 23A definition of accrued benefit? And how do those differ? Because this says accrued benefit is expressed in the form of an annual benefit commencing at normal retirement age, which strikes me as requiring some sort of foresight. So what's the difference between the projections that don't meet the statute and wouldn't trigger a claim and what the statute refers to? Sure, Your Honor. What the statute is referring to is a statement based on what you have earned as of now, not what you will earn in the future. It is, and the Department of Labor's regulations make this clear, that the statement are a statement of what you've earned thus far. Just to be clear, what you've earned now, in terms of what you've earned now, would be payable at normal retirement age? Yes. Okay. Yes, exactly, Your Honor. What you have accrued now. I've worked X amount of time for Northrop, so if I stopped working for Northrop today, when I reach retirement age, what will my benefits be? Mr. Legner, is there any allegation in the complaint that the committee told Mr. Baffert he was asking for the wrong thing and he should ask for the right thing? No, Your Honor, because he wasn't asking for the wrong thing. He could ask for two different things. He could ask for a projection. How do we know that? The SPD explicitly says that. So, Your Honors, this is at page 43. Well, the SPD does, but we don't know when he navigated through these directions what he was confronted with, whether it gave him two choices of what to ask for. That's true, and that's a failure of their pleadings, which they had multiple opportunities. But what they alleged in their pleadings is that they entered their name and ID number and then they navigated choices, at which point they then had to call and convey their request. So getting back to the point and the original reason why this court originally remanded the case, there was no writing that conveyed the request to the plaintiffs. So we don't even need to get into this issue we've been discussing this entire time as to whether what they had requested was a pension benefit statement or not, because they did not make the request in writing. They did not. But the directions they followed, according to them, directed them to make the request over the telephone. That's true, Your Honor, and that's fine. The SPD, the summary plan description, also provides an address in which you can request by writing. And, in fact, it specifically says, and this is at page 57 of the SPD and so page 20 of the SER, says that you have the right to obtain a statement of what your benefits would be if you stopped working for the plan right now, what your benefits would be at normal retirement age. This statement must be requested in writing, and we provide it. And then the SPD goes on to provide an address. So the SPD says that you can request this in writing, provides the address. There's other ways to request it, as then that's a service that Northrop was providing. Do you want to speak anything to the triennial notice allegation? Yes, absolutely, Your Honor. First, that's beyond the scope of the remand. The court specifically in the first decision allowed remand to let the plaintiffs attempt to plead that they made requests in writing under B-2. If we decide that it was not an abuse of discretion for the district court to allow them to address this, then what is your response to Judge Johnstone's question? Two responses to that, Your Honor. The first is their claims are barred by the statute of limitations. There's a three-year statute of limitations that applies. Isn't that an affirmative defense? Rule on it? I'm sorry, Your Honor. Did Judge Wright rule on the statute of limitations grounds? The court did not reach the statute of limitations defense, Your Honor. And what's the – should we do that as sui sponte? Sure, Your Honor, because it is – and to Judge Johnstone's question, it is apparent from the face of the complaint. They retired on certain dates, right? Ms. Wilson in February 2014, Mr. Baffert in October 2016. The requirement to provide the triennial statement or the annual notices only applies to current plan employees. There's a three-year statute of limitations. Ms. Wilson's time had run to complain about that because the complaint was filed in 2018. Mr. Baffert, it would have run for all except perhaps the last year, but he alleges in the complaint that he requested a pension benefit statement and received the information right before he retired of what his benefits would be. So the complaint draws this distinction between requesting a statement of what are my benefits going to be if I retire right now based on what I have earned versus projection to help me plan for the future, which are two separate things. The other point, Your Honor, on the triennial statement point – and I know I'm out of time, so I'll wrap this up briefly. You're fine. You're fine. If I may thank you, is that the triennial statement requirement can be met by providing annual notice of how to obtain a statement, and the annual funding notices that they've attached to their complaint show that they were told how they could obtain a statement. Anything further? It looks like we're done. Thank you so much. Thank you so much, Your Honors. Thank you. You have a little over two minutes. Go right ahead. Thank you, Your Honor. First, I just want to say, without getting into it too much, that it was not beyond the scope of the remand for the district court to allow and to consider whether the committee met the triennial or notice requirements of Section 105. What is your response to the statute of limitations question? The statute of limitations question, I think it is an affirmative defense, but although you borrow for purposes of ERISA, for some purposes of ERISA from the state statute of limitations, when that accrues is a federal question, and under well-established law in the circuit and elsewhere, a claim does not accrue until the plaintiff knew or should have known of the injury, and that was not until they got both Mr. Baffert and Ms. Wilson got the recalculation notices, which was well within the statute of limitations period. They didn't know they'd been injured until that point, so the statute of limitations certainly has not run. And I would just like to end by saying this. We have alleged that they requested pension benefit statements. We didn't allege that they requested these projections. We allege that that's what they were given, and, you know, this is all supposed to be written and designed in a way to be understood and navigable, frankly, by average plan participants. That's actually in Section 105, in the language of Section 105 about the pension benefit statements. I'm having trouble understanding what the difference between these two supposed notices that you could get, a notice of what you would get at normal retirement age, which, you know, frankly, Ms. Wilson did not retire early. She retired, you know, after she reached normal retirement age, and all of this is just a mathematical calculation, which was consistently wrong in this case, and that really is the main question, whether, you know, being informed incorrectly about what your retirement benefits would be is a violation of Section 105. We allege that it is, and we ask this Court to hold the same. Thank you. Unless there are further questions, I have 15 seconds left, and I have nothing further to say. It doesn't appear that there are additional questions. Thank you all for your advocacy and your excellent briefs. They're very helpful. We'll take that case under advisement and go on to the next case on the calendar.
judges: BEA, CHRISTEN, JOHNSTONE